UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ISRAEL GARCIA-BORJA,

      Petitioner,

v.

ISIDRO BACA,[1] et al.,

      Respondents.

Case No. 3:18-cv-00573-RCJ-WGC

**ORDER**

  Israel Garcia-Borja, a Nevada prisoner who pleaded guilty to three counts of attempted lewdness with a child under the age of fourteen and is serving consecutive sentences of 96 to 240 months for each count, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, alleging that his trial counsel misinformed him about the possible statutory range for the minimum sentence before he pleaded guilty. (ECF No. 6.) This court denies the remaining ground of Garcia-Borja's habeas petition, denies him a certificate of appealability, and directs the clerk of the court to enter judgment accordingly.

**I. BACKGROUND**

  Garcia-Borja pleaded guilty to three counts of attempted lewdness with a child under the age of fourteen. (ECF No. 16-3.) Garcia-Borja appealed his judgment of conviction, and the Nevada Supreme Court affirmed. (ECF No. 16-31.) Garcia-Borja then sought habeas relief in Nevada state court, but following an evidentiary hearing, his petition was denied. (ECF Nos. 16-

---

[1] The state corrections department's inmate locator page states that Garcia-Borja is currently incarcerated at Lovelock Correctional Center. The department's website reflects that Tim Garrett is the warden for that facility. At the end of this order, the court directs the clerk to substitute Garcia-Borja' current physical custodian, Tim Garrett, as a respondent for the prior respondent Isidro Baca, pursuant to rule 25(d) of the Federal Rules of Civil Procedure.

38, 17-23, 17-26.) Garcia-Borja appealed, and the Nevada Court of Appeals affirmed. (ECF No. 18-13.)

Garcia-Borja filed his pro se federal habeas petition on January 9, 2019. (ECF No. 6.) The respondents moved to dismiss the petition. (ECF No. 12.) This court granted the motion, in part, finding that grounds 1 and 3 were unexhausted. (ECF No. 21.) Garcia-Borja abandoned grounds 1 and 3, and they were dismissed. (ECF Nos. 23, 24.) The respondents answered Garcia-Borja sole remaining ground—ground 2. (ECF No. 27.) This court construed Garcia-Borja's motion for appointment of counsel and evidentiary hearing and leave to file later reply as Garcia-Borja's reply brief. (ECF No. 31 at 2.)

## II.     STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v.*

*Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

### III.   DISCUSSION

In ground 2, his remaining ground for relief, Garcia-Borja alleges that his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments was violated because he would not have pleaded guilty if his trial counsel had accurately informed him that the state district court had discretion pursuant to Nev. Rev. Stat. § 193.130(1) to "quadruple his potential minimum sentence." (ECF No. 6 at 25 (citing *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("Though a mere inaccurate prediction, standing alone, would not constitute ineffective assistance,

3

the gross mischaracterization of the likely outcome [of a guilty plea], combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys." (Internal citation omitted)).)

### A. Background information

At an August 2012 pre-trial motions hearing, the state district court indicated that Garcia-Borja was charged with two counts of sexual assault on a child and two counts of lewdness with a child under the age of fourteen. (ECF No. 16 at 5.) The state district court canvassed Garcia-Borja about whether he had "ample opportunity to ask [his trial counsel] about negotiations." (*Id.* at 8.) After some discussion on the issue, the following colloquy occurred between Garcia-Borja, the state district court, the state, and Garcia-Borja's trial counsel regarding a failed negotiation whereby the state would have reduced the charges against Garcia-Borja to three counts of attempted lewdness with a child under the age of fourteen in return for Garcia-Borja's guilty plea:

> THE DEFENDANT: Well, it's just that my attorney told me that he could get me three lessor charges of Sexual Assault, that they would be 2 to 20. But I misunderstood. But he says that he explained that to me, that the maximum term is 8 to 20. And I told him that I would [sic] accept that deal because I thought it was going to be 2 to 20, not 8 to 20.
>
> THE COURT: Okay. I see. So you told him you were going to accept the deal to plead to the Attempted Lewdness, but you did that thinking the possible penalty was between 2 and 20 years?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And now someone has told you that the possible penalty is from 8 to 20 years?
>
> THE DEFENDANT: No. The deal that my attorney showed me were three charges of attempted assault, Sexual Assault. That's from 2 to 20. But there's a clause on the deal that I understand that the maximum term is from 8 to 20, and that I am conscious that I am signing from 24 to 60 months.

THE COURT: I'm sorry, I have no idea what your client is saying. None of it makes any sense to me. The Second Amended Information charges Attempted Lewdness With a Child.

[TRIAL COUNSEL]: Maybe I can help. Maybe. Your Honor, we all known that the Nevada Revised Statutes provide for a term of 2 to 20 years.

THE COURT: On Attempted Lewdness With a Child.

[TRIAL COUNSEL]: Yes.

And our understanding was we were going to be entering pleas today to three charges of Attempted Lewdness Upon a Child.

The statute provides that you could sentence the defendant between 2 and 20 years. However, we had reached an agreement where we would stipulate - - actually, the written agreement was that we would all stipulate to an 8 to 20 year term and ask that you run each of those consecutive. Then there was a - -

[THE STATE]: For a total of 24 to 60.

[TRIAL COUNSEL]: For a total of 24 to 60, which was changed this morning in which the defendant could have pled to the three charges and received a stipulated request for a sentence of 7 to 20 years to run consecutive to each other.

I explained to him that whether he got two years, seven years or eight years, you would make the final decision Your Honor. You would decide whether to honor the stipulation to give him less time, or in the case of the final negotiation you could even give him more time as a maximum term. I explained it to the defendant. The defendant has rejected that negotiation.

THE COURT: Okay. So, the penalty for Attempted Lewdness With a Child Under the Age of 14 years in the Second Amended Information as its now filed before we strike it, each of those counts, there's three of them, carry a potential of 2 to 20 years in prison.

[TRIAL COUNSEL]: That is correct, Your Honor. And where the misunderstanding is, that the defendant counter-offered personally that he receive a stipulation from the State that the State would agree to request of you, 2 to 20 years, ran consecutively for a total of 60 years. The State has rejected that offer. I've tried to explain - -

THE COURT: But you don't have to stipulate anything. You can still ask the Court for that.

5

1   [TRIAL COUNSEL]: No, Your Honor. The agreement with the State was that it had to be a stipulation.

2   [THE STATE]: Your Honor, may be approach for a minute here?

3 (Discussion off the record.)

4   THE COURT: Okay. Sir, so the next question that I have, now that I understand that the State was willing to give you this lessor charge, but you had to agree not to ask for less time than she was willing to do, I understand now that that's what your lawyer said, and you understand those negotiations, it sounds like you did.

  The only other question I have for you is to make sure you understand what the possible penalty is for Sexual Assault on a Child, which is what is in the Information that you're going forward on trial. So do you know what that possible penalty is?

  THE DEFENDANT: Yes.

  THE COURT: What's that?

  THE DEFENDANT: For the two charges of lewdness?

  THE COURT: No. You will be going to trial on all those charges that the clerk just read.

  THE DEFENDANT: Two, and a 10 to life, and two 20 to life.

  [TRIAL COUNSEL]: Yes, that's correct.

  THE COURT: Okay. Do you understand that the penalty for Sexual Assault on a Child is life in prison and you must serve a minimum of 20 years before you can be paroled?

  THE DEFENDANT: Yes.

  THE COURT: And the penalty for Lewdness With a Child Under the Age of 14 Years is life in prison with the possibility of parole after you served 10 years; is that correct?

  THE DEFENDANT: Yes.

. . .

>[THE STATE]: And I don't know, just so the record is completely clear, the Attempted Lewdness Charge - -
>
>[TRIAL COUNSEL]: Was only offered as part of a negotiation which has failed.
>
>[THE STATE]: Right, which has failed. The penalty for that is 2 to life, or probation.
>
>[TRIAL COUNSEL]: 2 to 20.
>
>[THE STATE]: That's right. I want it to be life. 2 to 20, and there's a possibility for probation. I don't think that would happen in this case. I'm just putting it on.
>
>[TRIAL COUNSEL]: But it's not part of this Information so the defendant does not have an opportunity to plead to that.
>
>THE COURT: As I understand it, as you now stand, there is no negotiation. He'll plead straight up to the Second Amended Information.
>
>[TRIAL COUNSEL]: That's correct. The negotiations part of the case is now over.

(*Id.* at 9–13, 16.)

A few weeks later, a change of plea hearing was held and a third amended information and guilty plea agreement were filed. (ECF Nos. 16-2, 16-3, 16-4.) The third amended information reduced the charges against Garcia-Borja from two counts of sexual assault on a child and two counts of lewdness with a child under the age of fourteen to three counts of attempted lewdness with a child under the age of fourteen. (ECF Nos. 13-3, 16-2.) At the change of plea hearing, Garcia-Borja's trial counsel indicated the following to the state district court:

>Your Honor, Mr. Garcia-Borja understands that each of these offenses are felonies. He further understands that each of these offenses carries a potential sentence of no less than two nor more than 20 years in the Nevada Department of Corrections. Whether these sentences run concurrent to or consecutive with each other, your Honor, he understands is totally at your discretion.

7

> He further understands, your Honor, that in order to seek probation in this case, he would need to have the proper certification from a mental health professional.
>
> Your Honor, as part of our negotiated settlement we have agreed not to pursue those mental health certifications. He understands that without those he would not be eligible for probation.
>
> Your Honor, I believe that with his time, he has almost six years of continuous incarceration. He understands that I could argue for time served at the time of the sentencing, that if he has qualify [sic] with minimum term of six years, and that the State would be free to argue in this case, your Honor, and that there's a potential sentence of three two-to-20-year sentences all running consecutive to each other, your Honor. Which he fully understands, and he understands that by pleading guilty today that would conclude this case, and that he would not proceed to trial.

(ECF No. 16-3 at 5–6.) The state district court then canvassed Garcia-Borja about his change of plea, and the following discussion occurred regarding Garcia-Borja's possible sentence:

> THE COURT: Did you - - do you know what the penalty is? Your attorney told me, but can you tell me what the penalty is for each offense? The maximum penalty?
>
> THE DEFENDANT: 20 years.
>
> THE COURT: And it starts at two, a minimum of two years, do you understand that?
>
> THE DEFENDANT: Yes. For - - for each count, or for each charge? I think that's what you say.
>
> THE COURT: Yes.
>
> THE DEFENDANT: It's two to 20 for each one.
>
> THE COURT: Correct. And do you understand that it's up to me and no one else whether or not these charges are run concurrent or consecutive to each other?
>
> THE DEFENDANT: Yes.
>
> THE COURT: If they were to be run consecutive, your plea today is exposing you to three [sic] to 60 years in prison. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that you would not be eligible for probation unless you're certified - - I'm sorry, is there a problem?

[THE STATE]: Your Honor, it should be six to - -

[TRIAL COUNSEL]: The minimum term would be six actual years, your Honor.

THE COURT: What did I say?

[THE STATE]: You said three.

THE COURT: Three?

[TRIAL COUNSEL]: Actually, judge, if you run them all concurrent, we're wrong and you're correct. It would be two years would be the minimum term, if the judge determined - - I'm sorry, is that correct?

THE COURT: Well, I don't know. My point of the question was that the maximum term would be six years to 60 years, and I may have said three.

[THE STATE]: I think it's eight, Your Honor.

THE COURT: 2, 4, 6. Three charges.

[THE STATE]: I'm sorry, you're right.

THE COURT: Six years. 20, 40, 60. 60 years on top.

[TRIAL COUNSEL]: You're absolutely correct, judge.

THE COURT: Okay, that's okay. Mr. Garcia-Borja, do you understand that?

THE DEFENDANT: Yes.

THE COURT: Not confused?

THE DEFENDANT: No.

. . .

> THE COURT: Has anyone told you you would be guaranteed any particular sentence if you pled guilty?
>
> THE DEFENDANT: No.

(*Id.* at 9–11, 13.) Similarly, Garcia-Borja's guilty plea agreement stated that he understood that he "may be imprisoned for a period of 2 to 20 years in the Nevada State Department of Corrections" for each count. (ECF No. 16-4 at 5–6.) In exchange for Garcia-Borja's guilty plea, "[t]he State and the Defense stipulate[d] that the Defense [would] not seek probation" and that "[b]oth sides [would] be otherwise free to argue for an appropriate sentence." (*Id.* at 6.) Garcia-Borja's guilty plea agreement also provided that he understood "that the Court [was] not bound by the agreement of the parties and that the matter of sentencing [was] to be determined solely by the Court" and that his "attorney ha[d] not promised that [he would] get any specific sentence." (*Id.* at 7.)

At Garcia-Borja's sentencing hearing several months later, Garcia-Borja's trial counsel suggested "that the Court sentence [Garcia-Borja] to a term of years of 3 to 20 on each count" to run consecutively. (ECF No. 16-7 at 10.) The state requested the maximum sentence. (*Id.* at 18.) After calling Garcia-Borja's crimes "egregious," the state district court sentenced Garcia-Borja to 96 to 240 months on each count to run consecutively. (*Id.* at 22.)

At the postconviction evidentiary hearing, Garcia-Borja testified that his trial counsel "said that he and the D.A. had come to an agreement that if [he] plead[ed] guilty to three charges of [attempted] lewdness with a minor of less than . . . fourteen years of age, that the deal would be 2 to 20 per charge." (ECF No. 17-23 at 9–10.) Thus, Garcia-Borja believed that he "would have a minimum of 6 years" before "go[ing] before Parole and then [he] would get deported." (*Id.* at 10.) Garcia-Borja testified that his trial counsel told him that "he would be free to argue for time served, but that the Judge would decide whether it would be time served or parole would let [him] out after

10

6 years." (*Id.* at 11.) Garcia-Borja also testified that his trial counsel never informed him that he could receive a minimum of eight years on each count "[b]ecause he knew if he told [him] that if [he] was going to get more than the 6 years minimum that [he] would not have accepted the agreement." (*Id.*) Garcia-Borja elaborated:

> For each charge 2 to 20. He told me if the first and second charges would be run together, I mean the first, second and the three [sic] charges they were to run together, they would be 2 to 20. And if the first and second would run together and the third one separately it would be penalty of 4 to 40. And if all three of them were to be separate, it would be 6 minimum to 60. But I was never told by anyone, I was never told that the Judge would give me more than 6, like 8, 20, 24 to 60. More than 6 years to see parole. If he would have told me that, I would have said no. I would have gone to trial. Because in my mind, I thought if I sign, I will go to court, they are going to give me 6 years minimum. I will go to parole and then I will be deported. But the Court sentenced me to the same time that I had refused two weeks prior which was 24 to 60. So I feel like they are making a mockery out of me. I don't know. First they offer 24 to 60. I say no. [Trial counsel] comes and says sign here, we'll have you deported and then I get the same thing.

(*Id.* at 21.)

Garcia-Borja's trial counsel testified at the postconviction evidentiary hearing that he was "certain" that he "would have explained to [Garcia-Borja] the 2 to 20 meant that there was a maximum potential sentence of 8 to 20" pursuant to Nevada's "40 percent rule." (ECF No. 17-23 at 28–19.) Garcia-Borja's trial counsel explained that "it [was] very important [his] client underst[ood] when we say that minimum term it is simply the suitability or ability to go before the Parole Board. That is not, in Nevada, an automatic release." (*Id.* at 19.) Garcia-Borja's trial counsel would have never told Garcia-Borja that "he was assured of seeing the Parole Board in 6 years." (*Id.*)

In denying Garcia-Borja's state habeas petition, the state district court found Garcia-Borja's trial counsel's testimony at the postconviction evidentiary hearing to be credible, and Garcia-Borja's testimony to be incredible. (ECF No. 17-26 at 3.)

11

### B.     Standard for an effective-assistance-of-counsel claim

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

When the ineffective assistance of counsel claim is based "[i]n the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004). As such, "[t]o succeed, the defendant must show that counsel's assistance was not within the range of competence demanded of counsel in criminal cases." *Id.* at 979–80. And regarding the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566

U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### C. State court determination

In affirming the denial of Garcia-Borja's state habeas petition, the Nevada Court of Appeals held:

> Garcia-Borja contends the district court erred by denying his claim that counsel was ineffective. To demonstrate ineffective assistance of counsel sufficient to invalidate a judgment of conviction based on a guilty plea, a petitioner must show counsel's performance was deficient in that it fell below an objective standard of reasonableness and prejudice resulted in that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996). Both components of the inquiry must be shown, *Strickland v. Washington*, 466 U.S. 668, 697 (1984), and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). For purposes of the deficiency prong, counsel is strongly presumed to have provided adequate assistance. *Strickland*, 466 U.S. at 690. We give deference to the district court's factual findings that are supported by substantial evidence and not clearly wrong but review the court's application of the

law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

Garcia-Borja argued counsel was ineffective for failing to explain the full range of minimum sentences Garcia-Borja could be subjected to as a result of his guilty plea. Both counsel and Garcia-Borja testified at the evidentiary hearing on the petition. The district court found counsel explained to Garcia-Borja the full range of minimum sentences he could face, which included the implications of the so-called "40% rule." For Garcia-Borja, that meant he could face a minimum sentence of up to eight years for each count. *See* NRS 193.130(1) ("The minimum term of imprisonment that may be imposed must not exceed 40 percent of the maximum term imposed."); NRS 193.330(1)(a)(1); NRS 201.230(2). The district court also found Garcia-Borja's conflicting testimony was not credible. "On matters of credibility this court will not reverse a trial court's finding absent a clear showing that the court reached the wrong conclusion." *Howard v. State*, 106 Nev. 713, 722, 800 P.2d 175, 180 (1990), *abrogated on other grounds by Harte v. State*, 116 Nev. 1054, 13 P.3d 420 (2000).

In support of his argument, Garcia-Borja points to imprecise language in the guilty plea memorandum and canvass suggesting he would be sentenced to terms of 2 to 20 years. However, looking to the record as a whole, reversal is not mandated. Counsel stated at the guilty plea hearing that Garcia-Borja understood each offense carried "a potential sentence of no less than two nor more than 20 years," indicating the minimum sentence could be higher than two years. Further, the record reveals that, two weeks prior to his guilty plea, Garcia-Borja knew he could receive a minimum sentence of up to 8 years on each count and the State would not stipulate to 2-year minimum sentences. The parties' compromise on the minimum-sentence issue appears to be reflected in the executed plea agreement: there would be no stipulated minimum sentence and the parties would be free to argue. In light of this record, Garcia-Borja has not made a clear showing the district court reached the wrong conclusion. We therefore cannot conclude the district court erred by denying this claim.

(ECF No. 18-13 at 2–4.)

### D.   Nevada state law

Attempted lewdness with a child under the age of fourteen years is subject to "imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 20 years." Nev. Rev. Stat. §§ 193.330(1)(a)(1), 201.230(2). The heart of Garcia-Borja's claim is that his trial counsel failed to inform him that his minimum sentence for

each count may exceed two years pursuant to Nev. Rev. Stat. 193.130(1). (ECF No. 6 at 20.) That statute provides, in relevant part, that "a person convicted of a felony shall be sentenced to minimum term and a maximum term of imprisonment which must be within the limits prescribed by the applicable statute," but "[t]he minimum term of imprisonment . . . must not exceed 40 percent of the maximum term imposed." Nev. Rev. Stat. § 193.130(1). Pursuant to Nevada's 40-percent rule, Nev. Rev. Stat. § 193.130(1), the state district court had the discretion to sentence Garcia-Borja to a minimum sentence of two to eight years with a maximum sentence of twenty years for each conviction.

### E. Conclusion

Trial counsel is "required to give the defendant the tools he needs to make an intelligent decision" regarding pleading guilty. *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002); *see also Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (explaining that "counsel have a duty to supply criminal defendants with necessary and accurate information" regarding their guilty plea). Garcia-Borja fails to demonstrate a deficiency on the part of his trial counsel to give him those tools. Indeed, as the Nevada Court of Appeals reasonably noted, the state district court determined that Garcia-Borja's trial counsel was credible in his postconviction evidentiary hearing testimony that he informed Garcia-Borja about the 40-percent rule, which meant that there was a potential maximum sentence of 8 to 20 years for each count. This court is not able to supplant this credibility determination. *See Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("Reasonable minds reviewing the record might disagree about [an individual]'s credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Garcia-Borja points out that the discussion at the pre-trial motions hearing, the language of his guilty plea agreement, and the discussion at his change of plea hearing demonstrate that his

trial counsel failed to inform him about the 40-percent rule, *i.e.*, that he could face a sentence of 8 to 20 years for each conviction. (*See* ECF No. 6 at 34.) The record belies Garcia-Borja's claims. At the pre-trial motions hearing, the parties informed the state district court that a plea deal had been discussed in which Garcia-Borja would plead guilty to reduced charges—three counts of attempted lewdness with a child under the age of fourteen years. (ECF No. 16 at 9–10.) However, the State rejected Garcia-Borja's counteroffer to stipulate that the minimum sentence for each count not exceed two years. (*Id.* at 11.) And, as the Nevada Court of Appeals reasonably noted, at that hearing, Garcia-Borja stated that his trial counsel explained "that the maximum term is 8 to 20" years for each count of attempted lewdness with a child under the age of fourteen. (*Id.* at 9.)

Garcia-Borja also appears to argue that he believed the previously mentioned stipulation limiting the possible minimum sentence was a part of the later negotiated plea deal because otherwise there was no benefit to him taking the deal at that later date, especially when he made it clear he would not plead guilty if the minimum sentence was not capped at two years for each count. (ECF No. 6 at 44.) The record again belies Garcia-Borja's claims. At the change of plea hearing, Garcia-Borja's trial counsel never mentioned a stipulation; rather, he made it clear that Garcia-Borja understood that "the State would be free to argue in this case." (ECF No. 16-3 at 6.) Garcia-Borja's guilty plea agreement also contained this portion of the agreement: "[b]oth sides will be otherwise free to argue for an appropriate sentence." (ECF No. 16-4 at 6.) Accordingly, as the Nevada Court of Appeals reasonably noted, the compromise achieved between the original plea offer and the accepted plea offer was the parties being free to argue for an appropriate sentence in lieu of a stipulated minimum sentence—either capping the minimum sentence to two years per count as Garcia-Borja originally counteroffered or stipulating to the maximum minimum sentence of eight years per count as the state originally offered. As such, Garcia-Borja's claim that his trial

counsel either explicitly or implicitly informed him that the plea deal included a stipulation capping his minimum sentence to two years on each count rests entirely on Garcia-Borja's self-serving statements. *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting an ineffective-assistance-of-trial-counsel claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence that his attorney failed to discuss potential defenses with him"); *Turner*, 281 F.3d at 881 (explaining that the petitioner's "self-serving statement, made years later, that [his trial counsel] told him that 'this was not a death penalty case' is insufficient to establish that [the petitioner] was unaware of the potential of a death verdict").

Therefore, on this record, the Nevada Court of Appeals' determination that Garcia-Borja failed to "show that [his trial] counsel's assistance was not within the range of competence demanded of counsel in criminal cases" constitutes an objectively reasonable application of *Strickland*'s performance prong. *Lambert*, 393 F.3d at 979–80; *Strickland*, 466 U.S. at 688. As such, the Nevada Court of Appeals' rejection of Garcia-Borja's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts. Garcia-Borja is not entitled to federal habeas for ground 2.[2]

---

[2] Garcia-Borja requested that an evidentiary hearing be held "to determine whether or not and when [his trial counsel] talked to [him] after the pre-trial motions hearing." (ECF No. 28 at 8.) This court previously denied this request without prejudice because it had yet to examine Garcia-Borja's remaining habeas claim on the merits. (*See* ECF No. 31 at 2.) Having now examined that claim on the merits, the court determines that the request for an evidentiary hearing is denied. A thorough evidentiary hearing was already held before the state district court regarding the main question in issue: Garcia-Borja's trial counsel's advice—or lack thereof—regarding the minimum sentence.

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Garcia-Borja. Rule 11 of the Rules Governing Section 2254 Cases requires this court issue or deny a certificate of appealability (COA). As such, this court has *sua sponte* evaluated the remaining claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Applying these standards, this court finds that a certificate of appealability is unwarranted.

## VI. CONCLUSION

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 6) is DENIED.

IT IS FURTHER ORDERED that Petitioner is denied a certificate of appealability.

IT IS FURTHER ORDERED that the Clerk of the Court will substitute Tim Garrett for Respondent Isidro Baca.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment accordingly.

Dated: March 29, 2022.

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE